**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LEXINGTON INSURANCE CO., a/s/o CHAMPION LOGISTICS GROUP, INC., | ) | |
| Plaintiff, | ) | No. 10 C 3229 |
| v. | ) | |
| YRC INC., f/k/a YELLOW ROADWAY CORPORATION, | ) | Judge Gotschall |
| Defendant. | ) | |

## ANSWER TO COMPLAINT

For its answer and affirmative defenses to the Complaint of plaintiff Lexington Insurance Company a/s/o Champion Logistics Group, Inc. ("Lexington"), defendant YRC Inc. f/k/a Yellow Roadway Corporation ("YRC") states and alleges as follows:

Unless specifically admitted in this Answer, all claims, theories, allegations and paragraphs in Lexington's Complaint are denied.

## PARTIES

1. At all times relevant hereto, Plaintiff Lexington was a corporation organized and existing under the laws of Delaware, having its principal place of business located at 200 State Street, Boston, Massachusetts, and providing insurance products and services throughout the United States, including the State of Illinois.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 1 of the Complaint and, therefore, denies the same.

2. Defendant YRC is a Delaware Corporation with its principal place of business at 10990 Roe Ave., Overland Park, Kansas. At all times relevant hereto, YRC conducted business in Chicago Ridge, Illinois. Such business included the transportation of property throughout Illinois and the United States.

**Answer:** Admit.

KCP-4015919-1

3. Champion Logistics Group Inc. (hereinafter, "Champion") is an Illinois Corporation with its principal place of business at 200 Champion Way, Northlake, Illinois. At all relevant times hereto, Champion conducted business in Illinois. Said business included the transportation of property throughout Illinois and the United States. At all times relevant hereto and on May 1, 2009, Champion held a property insurance policy through Lexington.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint and, therefore, denies the same.

4. No paragraph 4 in Complaint.

5. No paragraph 5 in Complaint.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 735 ILCS 5/2-209 because this action arises out of the wrongful acts and omissions committed by the Defendant in the State of Illinois. The amount in controversy is over $100,000 exclusive of costs.

**Answer:** YRC admits that the Circuit Court of Cook County, Illinois, may have jurisdiction over this matter, but jurisdiction is not exclusive in the Circuit Court of Cook County, Illinois. Answering further, the United States District Court for the Northern District of Illinois has concurrent jurisdiction over this matter pursuant to 49 U.S.C. § 14101(b)(2) and 28 U.S.C. § 1337(a). YRC admits that the amount in controversy exceeds $100,000, exclusive of costs.

7. Pursuant to 735 ILCS 5/2-103, venue of this action is proper in Cook County, Illinois because the cause of action arose in Cook County, Illinois.

**Answer:** YRC admits that venue may be proper in the Circuit Court of Cook County, Illinois, but venue is not exclusive in the Circuit Court of Cook County, Illinois. Answering further, venue is also proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1446.

## FACTUAL ALLEGATIONS

8. This action arises out of the damage to a shipment of Champion's Mino HD Video Cameras (hereinafter, "the cameras") at YRC's property on May 1, 2009.

**Answer:** YRC admits that Lexington alleges that a shipment of Champion's Mino HD Video Cameras was lost by YRC. Answering further, YRC denies any liability for the alleged loss of Champion's Mino HD Video Cameras.

9. Lexington was the property insurer of Champion at all times relevant to this proceeding and on May 1, 2009.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint and, therefore, denies the same.

10. Pursuant to its policy of insurance with Lexington, Champion made a claim seeking indemnification and reimbursement for damages resulting from the subject property damage and loss. Lexington paid $136,000 to or on behalf of CPD for such property damage and loss.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 10 of the Complaint and, therefore, denies the same.

11. In consideration of the payments made by Lexington, Champion subrogated to Lexington all rights, claims and interests it may have against any person or entity that may be liable for causing the reimbursed damages and loss to the Champion property.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 11 of the Complaint and, therefore, denies the same.

12. Prior to May 1, 2009, Champion was retained by Best Buy to deliver a shipment of Mino HD Video Cameras.

**Answer:** YRC lacks knowledge and information sufficient to form a belief as to the truth of the allegations of paragraph 12 of the Complaint and, therefore, denies the same.

13. Prior to May 1, 2009, Champion contracted with Defendant YRC for the transportation and delivery of the cameras from the Champion facility in Illinois to the Best Buy warehouse in New York.

**Answer:** Admit.

14. Upon information and belief, YRC took possession of the cameras on or about April 30, 2009, signing a Bill of Lading specifically stating the number of cameras for delivery to Best Buy in New York. The Bill of Lading is attached hereto as Exhibit 1.

**Answer:** YRC admits that the Bill of Lading attached as Exhibit 1 to the Complaint appears to be signed by a representative of YRC. Answering further, YRC denies the remaining allegations of paragraph 14 of the Complaint.

15. On or about May 1, 2009, YRC left the trailer containing the cameras unattended overnight at the YRC freight yard facility in Chicago Ridge, Illinois.

**Answer:** Deny.

16. Upon information and belief, during the early morning of May 1, 2009, an unknown person removed a pallet of cameras from the loaded truck located at the YRC facility. It is unknown what happened to this pallet of cameras.

**Answer:** Deny.

17. Upon information and belief, YRC transported the remaining cameras to the Best Buy facility in New York.

**Answer:** YRC admits delivering all freight tendered by Champion to YRC on or about April 30, 2009 to the Best Buy facility in New York on May 1, 2009. Answering further, YRC denies that the alleged missing cameras were tendered to YRC for delivery to the Best Buy facility in New York.

18. On or about May 1, 2009, upon arrival at the Best Buy facility, it was discovered that the truck was missing a pallet of cameras.

**Answer:** YRC admits that there was a discrepancy in the number of cameras delivered to Best Buy on or about May 1, 2009. Answering further, YRC denies any liability for

the alleged discrepancy in the number of cameras delivered to Best Buy on or about May 1, 2009.

19. Defendant's failure to properly store and secure the trailer, containing the Champion cameras for delivery to Best Buy, while at its property overnight caused $136,000 in damages.

**Answer:** Deny.

**COUNT I**
**BAILMENT**

20. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 19 as though fully set forth herein.

**Answer:** YRC incorporates by reference and restates its responses to all preceding paragraphs as though fully set forth herein.

21. At all times relevant herein, Defendant YRC was a common carrier and/or freight forwarder that contracted with Champion for the safe transportation and delivery of the cameras.

**Answer:** Deny.

22. On or about April 30, 2009, Champion placed the cameras into the care, custody and control of YRC for the purposes of transporting and delivering the cameras to New York.

**Answer:** YRC denies that Champion placed the cameras into the care, custody and control of YRC for the purposes of transporting and delivering the cameras to New York.

23. Defendant accepted the cameras for the purpose of transporting and delivering the cameras to New York, thus creating a bailment whereby the Defendant became liable for the value of the cameras while under its care, custody and control.

**Answer:** Deny.

24. Defendant owed a duty to Plaintiff, and Plaintiff's subrogee, to deliver the cameras to their destination in the same condition as when they were received.

**Answer:** Paragraph 24 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required to the allegations of paragraph 24 of

the Complaint, YRC denies the same because the cameras were not tendered to YRC for transportation.

25. Defendant YRC breached its duty by its failure to delivery the cameras in the same condition as when received, as the cameras were stolen while they were in Defendant's care, custody and control.

**Answer:** Deny.

26. As a further direct, proximate, and legal result of the Defendant YRC's acts and/or omissions, more fully described above, Champion, and Plaintiff as its Insurer, suffered substantial losses and damages to its personal property in the amount of $136,000.

**Answer:** Deny.

**WHEREFORE**, for the reasons set forth above, YRC requests that Plaintiff take nothing, that the Complaint be dismissed, and that a judgment be entered in YRC's favor for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II
## NEGLIGENCE AND GROSS NEGLIGENCE OF DEFENDANT

27. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 26 as though fully set forth herein.

**Answer:** YRC incorporates by reference and restates its responses to all preceding paragraphs as though fully set forth herein.

28. Defendant YRC owed certain duties to Champion and Plaintiff pursuant to the requirements of law, duties of the common law and statutes of Illinois.

**Answer:** Paragraph 28 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required to the allegations of paragraph 28 of the Complaint, YRC denies the same because the cameras were not tendered to YRC for transportation.

29. Defendant breached its duty to Plaintiff by the following acts and/or omissions constituting negligence and/or gross negligence, including but not limited to:

a. Failing to provide for the safe keeping of Champion's cargo;

b. Failing to deliver Champion's cargo in the same condition as when it was received;

c. Failing to properly supervise the care and safe keeping of Champion's property;

d. Failing to properly hire, supervise and/or train its employees, agents, and/or representatives including the employees, agents and/or representatives of any connecting carriers;

e. Failing to require its employees, agents, representatives and/or connecting carriers to secure its tractor-trailers in a reasonably safe manner to prevent unreasonable harm and/or theft of Plaintiff's property;

f. Leaving the trailer unattended for several hours, exposing it and its contents to peril;

g. Any other violations of Illinois law that become known through discovery;

h. Any other acts and/or omissions that become known through the course of discovery.

**Answer:** YRC denies the allegations of paragraph 29 and subparagraphs a through h.

30. As a further direct, proximate, and legal result of the Defendant YRC's negligent and/or gross negligent acts and/or omissions, more fully described above, Champion, and Plaintiff as its Insurer, suffered substantial losses and damages to its personal property in the amount of $136,000.

**Answer:** Deny.

**WHEREFORE**, for the reasons set forth above, YRC requests that Plaintiff take nothing, that the Complaint be dismissed, and that a judgment be entered in YRC's favor for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT AND WARRANTY**

31. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 30 as though fully set forth herein.

**Answer:** YRC incorporates by reference and restates its responses to all preceding paragraphs as though fully set forth herein.

32. The expressed and/or implied contract entered into between Champion and the Defendant YRC required the Defendant, upon acceptance of the cameras, to keep them safe and free from harm and to deliver the cameras in the same condition as when they were received.

**Answer:** Paragraph 32 of the Complaint calls for a legal conclusion to which no response is required. To the extent a response is required to the allegations of paragraph 32 of the Complaint, YRC denies the same because the cameras were not tendered to YRC for transportation.

33. Defendant breached its contract to Champion by failing to deliver the subject cameras as required under the contract.

**Answer:** Deny.

34. As a further direct, proximate, and legal result of the Defendant YRC's breach of contract and breach of its express and/or implied warranties, more fully described above, Champion, and Plaintiff as its Insurer, suffered substantial losses and damages to its personal property in the amount of $136,000.

**Answer:** Deny.

**WHEREFORE**, for the reasons set forth above, YRC requests that Plaintiff take nothing, that the Complaint be dismissed, and that a judgment be entered in YRC's favor for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV
## LIABILITY UNDER THE CARMACK AMENDMENT

35. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 34 as though fully set forth herein.

**Answer:** YRC incorporates by reference and restates its responses to all preceding paragraphs as though fully set forth herein.

36. At all times relevant herein, Defendant YRC was a common carrier and/or freight forwarder that contracted with Champion to safely transport and deliver the cameras.

**Answer:** Deny.

37. Prior to May 1, 2009, Champion transferred the property in good condition into the care, custody, and control of YRC for the purpose of transporting and delivering it to its ultimate point of delivery in New York.

**Answer:** Deny.

38. Defendant accepted the cameras for the purpose of transporting and delivering them, whereby Defendant became liable for the full value of the cameras while they were under Defendant's care, custody and control.

**Answer:** Deny.

39. Under the Carmack Amendment, Defendant owed a duty to Champion to deliver the cameras in the same condition as when they were when received.

**Answer:** YRC admits that under the Carmack Amendment it owed a duty to Champion to deliver Champion's freight in the same condition as when the freight was received by YRC. YRC denies that the cameras were delivered to YRC by Champion.

40. Defendant breached its duty and violated the Carmack Amendment by its failure to deliver the cameras in the same condition as when received as contemplated between the parties and specifically, by allowing the cameras to be lost or stolen while in Defendant's care, custody and control.

**Answer:** Deny.

41. Defendant is liable for the loss of the cameras under the Carmack Amendment.

**Answer:** Deny.

42. As a further direct, proximate, and legal result of the Defendant YRC's violation of the Carmack Amendment, more fully described above, Champion, and Plaintiff as its Insurer, suffered substantial losses and damages to its personal property in the amount of $136,000.

**Answer:** Deny.

**WHEREFORE**, for the reasons set forth above, YRC requests that Plaintiff take nothing, that the Complaint be dismissed, and that a judgment be entered in YRC's favor for its reasonable attorneys' fees and costs, and for such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

For its affirmative defenses to Plaintiff's Complaint, YRC states as follows:

### FIRST AFFIRMATIVE DEFENSE

1. Count IV (Liability Under the Carmack Amendment) asserts a claim under the Carmack Amendment, 49 U.S.C. § 14706.

2. The Carmack Amendment preempts all state-law causes of action for damages resulting from any failure to discharge a carrier's duties with respect to any part of interstate transportation to the agreed destination.

3. To the extent that Plaintiff has a cause of action arising under the Carmack Amendment, Count I (Bailment), Count II (Negligence and Gross Negligence), and Count III (Breach of Contract and Warranty) are preempted by federal law and fail to state a cause of action upon which relief may be granted.

## SECOND (ALTERNATIVE) AFFIRMATIVE DEFENSE

1. Count III of Plaintiff's Complaint alleges a cause of action arising from an alleged breach of contract between Defendant YRC and Plaintiff's subrogor, Champion Logistics Group.

2. The transportation services which are the subject of Plaintiff's Complaint were performed pursuant to a transportation contract entered into on or about May 24, 2007, by and between Champion and YRC.

3. The transportation contract between Champion and YRC provides, in part: "This contract is entered into under 49 U.S.C. § 14101(b). The parties hereby expressly waive any and all rights and remedies they may have against each other under the Interstate Commerce Commission Act, except where otherwise prohibited by law or as stated herein."

4. 49 U.S.C. § 14101(b) provides, in part: "Remedy for breach of contract. The exclusive remedy for any alleged breach of a contract entered into under this subsection shall be an action in an appropriate State court or United States district court, unless the parties otherwise agree."

5. Count I (Bailment), Count II (Negligence and Gross Negligence),and Count IV (Liability Under the Carmack Amendment) each fail to state a claim against YRC because Plaintiff's claims against YRC are barred by federal law, 49 U.S.C. § 14101(b)(2), and the transportation contract.

## THIRD AFFIRMATIVE DEFENSE

If Plaintiff suffered any damages, which are expressly denied, the negligence or fault of others must be compared, which bars or diminishes Plaintiff's right to recover herein.

**FOURTH AFFIRMATIVE DEFENSE**

Any damages that Plaintiff may have suffered, which are expressly denied, were directly caused by or contributed to by Plaintiff and Plaintiff should therefore be barred from recovery.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to mitigate its damages, if any.

**SIXTH AFFIRMATIVE DEFENSE**

The shipment YRC received for transportation was accepted in accordance with and subject to all the terms and conditions of the Contract and YRC's effective rates, rules, classifications and tariffs, and the rules and regulations of the Federal Motor Carrier Safety Administration, which together form the contract of carriage for the transportation of said shipment and define the responsibilities of YRC in this matter. YRC duly performed all of the terms and conditions thereunder which it was required to perform.

**SEVENTH AFFIRMATIVE DEFENSE**

1. YRC's liability to Plaintiff, if any, is limited by the Contract and YRC's rates, rules, classifications and tariffs governing the subject shipment.

2. Paragraph 2 of the Contract limits YRC's liability for actual loss or injury to Champion's freight, if any, "to a maximum of $25.00 per pound per package or $100,000 per shipment - whichever is lower."

3. Champion declared the total weight of the shipment to be 645 pounds.

4. Defendant's maximum liability under the contract may not exceed $4,125.00 (645 pounds by $25/pound).

**EIGHTH AFFIRMATIVE DEFENSE**

YRC is not liable for any loss or damage caused by or resulting from an act, omission or order of the shipper, or from a defect or inherent vice of the article, improper labeling, or improper packaging, packing or loading of the shipment by the shipper or anyone acting on behalf of the shipper.

**NINTH AFFIRMATIVE DEFENSE**

1. Paragraph 2 of the Contract and YRC's rates, rules, classifications and tariffs do not allow special damages such as loss of use, loss of revenue, lost profits, additional contractor costs and the like.

2. To the extent any of the damages sought by Plaintiff in its Complaint constitute special or consequential damages, YRC is not liable.

**WHEREFORE**, YRC requests judgment dismissing with prejudice Plaintiff's Complaint, entering judgment in its favor and against Plaintiff, and awarding YRC its costs in this action.

Respectfully submitted,

YRC INC.

By: s/ Bruce C. Spitzer

One of its attorneys
Bruce C. Spitzer
METGE SPITZER
10 South Riverside Plaza, Suite 720
Chicago, Illinois 60606
(312) 580-1710
ARDC No. 2691604

**CERTIFICATE OF SERVICE**

I, Bruce C. Spitzer, an attorney, certify I served a copy of the foregoing document on Megan E. Ritenour, Foran Glennon Palandech & Ponzi PC, 222 North LaSalle Street, Suite 1400, Chicago, Illinois 60601, by placing the same in a properly addressed envelope, with postage prepaid, and depositing the same in the U. S. Mail at 10 South Riverside Plaza, Chicago, Illinois, before 5:00 p.m. this 26th day of May, 2010.

s/Bruce C. Spitzer